IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LARRY EUGENE LAWTON,      )
                        )
         Petitioner,      )
                        )
                        )     CIV-14-1393-F
v.                       )
                        )
ROBERT PATTON, Director,   )
                        )
         Respondent.    )

## SECOND SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the convictions for Trafficking in Illegal Drugs after two or more prior felony convictions, Possession of Controlled Substance with Intent to Distribute, Acquiring Proceeds from Illegal Drug Activity, and Possession of Controlled Drug without Tax Stamp entered against him in the District Court of Logan County, Case No. CF-2011-241. Respondent has responded to the Petition and filed the relevant state court records. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

In the Oklahoma Court of Criminal Appeals' ("OCCA") opinion resolving Petitioner's direct appeal, the court set forth factual findings that thoroughly and concisely describe the

history of the offenses Petitioner is challenging. These findings, which are presumed correct,[1]

are as follows:

> [Petitioner's] presence at a Guthrie motel for approximately three weeks in August and September of 2011 aroused the suspicions of a local businessman and former narcotics investigator, who recognized [Petitioner] as a suspected drug dealer. The businessman also noticed that a second man, who later proved to be Doug McLaurin, was paying brief visits to [Petitioner's] motel room on an almost daily basis. He reported these activities to Guthrie police, who began an investigation. The businessman saw [Petitioner] return to the motel, after a few days' absence, on September 27, 2011. [Petitioner] was carrying a duffel bag, and was accompanied by a black female. The businessman then saw McLaurin pay a visit to the room later that day, and notified Guthrie police. Police arrested McLaurin on outstanding warrants, and found him in possession of a plastic baggie containing an apparent rock of crack cocaine. Lt. Mark Bruning, the Guthrie police officer supervising the investigation of [Petitioner's] activities, also learned that [Petitioner] had an outstanding Cleveland County warrant for his arrest.
> Later that evening, Lt. Bruning and other officers knocked on the door of room 121 at the motel. They received no response. Officer Bruning then placed a call to the room from the motel office, and a male voice answered. Bruning hung up the phone and returned to the room, at which point [Petitioner] opened the door. The officers then arrested [Petitioner] on the warrant. [Petitioner], who was not wearing shoes at the time of his arrest, asked an officer to get his shoes from underneath the sink in the bathroom. Crossing the room, the officer saw a blunt, or cigar wrapper containing a greenish substance he thought was marijuana, in an ashtray sitting on one of the beds. The officers then removed [Petitioner's] companion and secured the room. Lt. Bruning obtained a telephonic warrant to search the motel room. Officers executing the warrant recovered 5 baggies of

[1]Petitioner has not overcome the presumption with clear and convincing evidence, as required by 28 U.S.C. § 2254(e)(1).

marijuana of various weights packaged in a larger baggie, totaling approximately 75 grams; a Styrofoam cup in the refrigerator containing approximately 39 grams of crack cocaine; a digital scale and two razor blades with apparent drug residue; a box of plastic baggies; $2,150 in mostly smaller denominations bundled in cellophane; a duffel bag containing men's clothing and two motel receipts for room 121, one bearing the signature "Larry Lawton;" and four cell phones. Men's clothing consistent with [Petitioner's] size was hanging in the rack and folded on the shelves. Another bag contained belongings associated with [Petitioner's] companion, and the only women's clothing found in the room. [Petitioner] asked for, and put on, a pair of men's shoes from the room before leaving the scene.

Response, Ex. 3, at 2-3.

The record in Case No. CF-2011-241 further shows that Petitioner was charged in an information filed in the District Court of Logan County on September 29, 2011, with the offenses of Trafficking in Illegal Drugs, Possession of Controlled Substance with Intent to Distribute, Acquiring Proceeds from Illegal Drug Activity, and Possession of Controlled Drug without Tax Stamp, all after eleven felony convictions. Original Record, at 1-4. In an amended information filed June 19, 2012, Petitioner was charged with the same four offenses, all after eleven felony convictions. Original record, at 86-89. In a second amended information filed June 25, 2012, Petitioner was charged with the same four offenses, with only the trafficking charge alleged to have been committed after six drug-related felony convictions. Original Record, at 97-99.

In the first stage of a two-stage jury trial conducted on June 25-26, 2012, Petitioner was convicted of each of the four substantive offenses. In a second stage of the trial,

Petitioner was convicted of having committed the trafficking offense after two or more prior felony convictions.

Petitioner was sentenced, consistent with the jury's recommendation, to life without parole for the trafficking offense, 50 years of imprisonment for the possession with intent to distribute offense, five years of imprisonment for the illegal drug proceeds offense, and a suspended $10,000 fine for the tax stamp offense.[2] The trial court ordered the sentences to run concurrently. Original Record, at 184-188.

In his direct appeal, Petitioner presented eleven grounds for relief. Response, Ex. 1 (Brief of Appellant). The State opposed each of those grounds. Response, Ex. 2 (Brief of Appellee). In a 15-page opinion entered January 15, 2014, the OCCA rejected each of Petitioner's grounds for relief from the convictions. Response, Ex. 3.

Petitioner subsequently filed an application for post-conviction relief in the district court, alleging that he was denied effective assistance of trial counsel and also alleging he was denied effective assistance of appellate counsel due to appellate counsel's failure to assert the first claim. The district court's docket reflects that the post-conviction application was denied on June 20, 2014, although neither Petitioner or Respondent has provided a copy of an order or opinion entered by the district court. Response, Ex. 7, at 20. Petitioner has conceded that he did not appeal this decision. Petitioner's Reply to Respondent's Motion to Dismiss for Failure to Exhaust State Court Remedies (Doc. # 22).

---

[2]The trial court did not impose the $25,000 fine recommended by the jury for the trafficking offense.

Before this Court, Petitioner initially asserted thirteen grounds for habeas relief, including ten of the eleven grounds for relief that he raised in his direct appeal. Petitioner also asserts the two grounds for relief presented in his post-conviction application. In a thirteenth ground for relief Petitioner alleges his sentences were excessive, although Petitioner did not raise this claim either in his direct appeal or post-conviction proceedings.

In response to a motion filed by Respondent urging dismissal of the habeas action for lack of exhaustion, Petitioner admitted that he did not exhaust available state remedies concerning the issues presented in grounds eleven through thirteen of the Petition (designated Ground Twelve through Ground Fourteen in the Petition). At Petitioner's request, the issues raised in grounds eleven through thirteen of the Petition (designated Ground Twelve, Ground Thirteen, and Ground Fourteen) were dismissed by the Court without prejudice. Order (Doc. # 26).

Consequently, before the Court are the issues raised in Petitioner's remaining ten grounds for relief (designated Ground Two through Ground Eleven in the Petition).[3] As previously found in the Supplemental Report and Recommendation, Petitioner has exhausted state court remedies concerning the remaining ten grounds for relief urged in the Petition.

II. Standard of Review of Constitutional Claims

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court

---

[3]As previously found in the Supplemental Report and Recommendation, whether intentionally or unintentionally Petitioner has not raised the first ground that he asserted in his direct appeal (designated Proposition I in his Brief of Appellant filed in the appeal). His first ground for relief in the Petition is designated "Ground Two."

cannot grant habeas relief with respect to a state prisoner's claim of a constitutional deprivation that was adjudicated on its merits in state court proceedings unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(per curiam)(citations omitted). See Cullen v. Pinholster, 563 U.S. __, 131 S.Ct. 1388 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Further, state-court findings of fact are

presumed correct and entitled to deference. 28 U.S.C. § 2254(e)(1).

III. Stone's Preclusion Rule for Fourth Amendment Claims - Grounds One and Two (Designated Ground Two and Ground Three in the Petition)

In Petitioner's first ground for habeas relief (designated Ground Two in the Petition), Petitioner asserts that "the telephonic search warrant is invalid due to lack of probable cause." Petition, at 5. In his second ground for habeas relief (designated Ground Three in the Petition), Petitioner asserts that "the pretextual search occurred outside the officers' jurisdiction." Id. at 7.

As supporting facts for these claims and for all of the claims asserted in the Petition, Petitioner states only "See Attached." Petitioner has attached to the Petition a copy of the Brief of Appellant filed in his direct appeal. It is assumed that Petitioner is referring to and incorporating by reference the arguments presented in his direct appeal. Nowhere in his Petition does Petitioner address the deferential standard of review required by the AEDPA. Nevertheless, except as explained below, each of his constitutional claims is subject to the AEDPA's standard of review.

With respect to the Fourth Amendment claims asserted in the first and second grounds of the Petition (designated Ground Two and Ground Three), Respondent contends that Petitioner was given a full and fair opportunity to litigate these claims in his direct appeal. Hence, Respondent argues that the Supreme Court's rule announced in Stone v. Powell, 428 U.S. 465 (1976), precludes consideration of the merits of the same claims in this habeas proceeding.

In Stone, the Supreme Court addressed the question of whether, in a federal habeas proceeding, state prisoners may assert a violation of the Fourth Amendment with respect to seized evidence introduced at a trial. The Court reasoned that the "[e]vidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease." Id. at 492. The purpose of this exclusionary rule is "to discourage law enforcement officials from violating the Fourth Amendment by removing the incentive to disregard it." Id. This goal would not be enhanced, the Court found, "if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant." Id. at 492-493.

Further, the Supreme Court found in Stone that any benefit from allowing habeas review of a search-and-seizure claim would be outweighed by the costs to other values promoted by the criminal justice system. Id. at 493-494. Thus, the Court concluded that where a State has provided "an opportunity for full and fair litigation of a Fourth Amendment claim" at trial or on appeal, a state prisoner may not obtain habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. Id. at 494.

Considering all of the circumstances present herein, the record shows that Petitioner was given an opportunity for full and fair consideration of his Fourth Amendment claims in his direct appeal.

In Proposition II in his direct appeal, Petitioner asserted that there was no probable cause to support the telephonic search warrant obtained by Guthrie police officer Bruning

and employed in a search of the motel room in which Petitioner had earlier been arrested. Petitioner argued that Officer Bruning's preliminary hearing and trial testimony was inconsistent concerning the substance found in the motel room that supported the "plain view" request for a telephonic search warrant and therefore "any items retrieved as a result of the search warrant should not be admitted against [Petitioner] under the doctrine of the 'fruit of the poisonous tree.'" Response, Ex. 1 (Brief of Appellant), at 6-7. (citing Wong Sun v. United States, 371 U.S. 471 (1963)(evidence seized in violation of Fourth Amendment must be excluded as "fruit of the poisonous tree")).

Because Petitioner did not move to suppress the warrant or challenge the admissibility of the evidence seized pursuant to the search warrant at or before trial, the OCCA reviewed Petitioner's claims of Fourth Amendment violations for plain error. Response, Ex. 3, at 5, 6.

With respect to the probable cause issue, the OCCA stated that Petitioner was attempting to "challenge the magistrate's probable cause determination by parsing not only the officer/affiant's statements in the search warrant affidavit, but also several statements by the officer/affiant in later testimony, that clearly played no role in the determination of probable cause." Id. at 5-6. The appellate court further found, based on the standard for determining the existence of probable cause set forth by the Supreme Court in Illinois v. Gates, 462 U.S. 213, 238-39 (1983), that no plain error occurred.

In support of this conclusion, the OCCA found that

> the affidavit referenced suspected drug dealing at the [Petitioner's] motel room; [Petitioner's] known history of drug dealing; the arrest of Doug McLaurin, in possession of 2 grams

of suspected cocaine, shortly after he left the room; and an experienced officer's plain view of a suspected marijuana blunt inside the room. The magistrate clearly had a substantial basis for issuing a warrant to search the motel room, and no plain error occurred.

Response, Ex. 3, at 6.

In Proposition III in his direct appeal, Petitioner again relied on the "fruit of the poisonous tree" doctrine established in Wong Sun in arguing that the search of the motel room was invalid because it resulted from the officers' execution of an arrest warrant "from a different county" and outside of their statutory jurisdiction. Response, Ex. 1, at 8-9.

The OCCA found that the search warrant affidavit in Petitioner's case "shows that the arresting officer verified the existence of an active Cleveland County warrant for [Petitioner's] arrest. [Petitioner] was taken into custody based on that warrant at his motel room, after the same was faxed from Cleveland County to Lt. Mark Bruning." Response, Ex. 3, at 6-7. Citing state law and the court's own precedent, the OCCA found that Petitioner had "not shown any error in his arrest by a peace officer to whom arrest warrants had been delivered." Id. at 7.

In his reply to the Response, Petitioner asserts only that he is innocent of the drug-related offenses. He does not assert that he did not have a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. The OCCA's decision reflects consideration of the record and the relevant state and constitutional law in determining that Petitioner's Fourth Amendment claims lacked merit. Accordingly, under Stone, Petitioner is barred from relitigating his Fourth Amendment claims in this habeas proceeding, and

Petitioner is not entitled to habeas relief concerning these claims.

IV. Sufficiency of the Evidence - Dominion and Control

In Ground Four of the Petition, Petitioner asserts that the prosecution "failed to prove dominion [and] control" of the illegal substances found in the motel room and therefore "his convictions must be reversed." Petition, at 9. Petitioner argued in his direct appeal that there was no evidence presented at his trial linking him to the motel room in which the illegal drugs were discovered other than his presence in that room. Because under Oklahoma law both the trafficking and the possession charges require evidence of dominion and control over illegal substances, and no such evidence was presented at his trial, Petitioner argued the convictions were not supported by sufficient evidence to prove beyond a reasonable doubt that he had knowledge or possession of the illegal substances found in the motel room.

When a habeas petitioner seeks to challenge the sufficiency of the evidence supporting a conviction, the Supreme Court has clearly established that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson).

Citing the standard established in Jackson and adopted by the OCCA in Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985), for reviewing sufficiency of the evidence claims, the OCCA rejected Petitioner's claim that insufficient evidence supported his convictions. Thus, this Court must determine whether the OCCA's decision was contrary

to or an unreasonable application of the Supreme Court's decision in <u>Jackson.</u> Petitioner has not addressed the deferential standard of review applicable to his claim under the AEDPA. Petitioner merely argues that the evidence was not sufficient to support his drug trafficking and possession convictions.

In Oklahoma, both of the drug-related offenses of which Petitioner was convicted require proof of knowing and intentional possession of the illegal substances. Okla. Stat. tit. 63, § 2-415(B)(1) and (C)(7)(a); Okla. Stat. tit. 63, § 2-401(A)(1).

The OCCA found that the evidence presented at Petitioner's trial was sufficient to support the convictions. In its decision, the court made the following factual findings, which are presumed correct, in reaching this conclusion:

> [Petitioner] was identified as occupying a room at the motel for almost three weeks before the search. He had asked the manager for more time to pay for his room. Police recovered two receipts for payments on the room, one bearing [Petitioner's] name and apparent signature, in a bag like the one [Petitioner] had carried into the room earlier that day. Men's clothing, consistent with [Petitioner's] general size, was found on shelves and hanging in the room. Drugs were found folded within this clothing. The only property belonging to [Petitioner's] female companion was within her separate bag. No drugs were found in her bag. [Petitioner] asked the police to retrieve his shoes from a cabinet inside the room, and wore those shoes after his arrest. The drugs, scales, paraphernalia, and money were found in different locations within the room. [Petitioner] also volunteered to police after his arrest that the room did not belong to him. The evidence of possession is sufficient. Proposition Four is denied.

Response, Ex. 3, at 8.

In his responsive pleading, Petitioner asserts that he is innocent of the offenses,

apparently based on the same argument he presented in his direct appeal. However, Petitioner has not presented clear and convincing evidence that would overcome the presumption of correctness attached to the OCCA's factual findings. See 28 U.S.C. §2254(e)(1).

"An individual constructively possesses property when he knowingly holds the power and ability to exercise dominion and control over the property." United States v. Ruiz-Castro, 92 F.3d 1519, 1531 (10th Cir. 1996)(quotation marks and brackets omitted). "In order to establish constructive possession, the government must establish that there was a sufficient nexus between the accused and the drug." Id.

Considering the OCCA's presumptively-correct factual findings, a rational jury could have found that Petitioner had at least constructive possession and knowledge of the cocaine and marijuana found in the motel room. Thus, there was sufficient evidence presented at Petitioner's trial for a jury to find him guilty of the trafficking and possession offenses beyond a reasonable doubt. Petitioner has failed to demonstrate that the OCCA's decision was contrary to or an unreasonable application of Jackson's controlling standard, and he is not entitled to habeas relief concerning this claim.

V.  Sufficiency of the Evidence - Intent to Distribute

Petitioner contends in Ground Five of the Petition that "the State failed to prove the element of intent to distribute in regard to the marijuana." Petition, at 11. In his direct appeal, Petitioner asserted that less than three ounces of marijuana, an amount not inconsistent with personal use, was found in the motel room in which Petitioner had been

staying, and under these circumstances the prosecution failed to establish the necessary element of intent to distribute. The OCCA rejected this claim, finding that "[p]olice recovered five individually bagged quantities of marijuana in varying amounts, all contained within a larger baggie. They recovered digital scales and a box of baggies often used to package drugs for sale. In the light most favorable to the State, the evidence is sufficient to establish [Petitioner's] intent to distribute marijuana." Response, Ex. 3, at 8-9.

Petitioner has not overcome the presumption of correctness attached to the OCCA's factual findings. Considering the OCCA's presumptively-correct factual findings, there was more than sufficient evidence presented at Petitioner's trial for a jury to find him guilty of the offense of possession with intent to distribute beyond a reasonable doubt. The OCCA applied the controlling <u>Jackson</u> standard in resolving this claim, and Petitioner has not shown that the OCCA's decision was contrary to or unreasonably applied <u>Jackson</u>'s governing standard. Petitioner is not entitled to habeas relief concerning this claim.

VI. <u>Failure to Instruct on Lesser Included Offense</u>

In Ground Six of the Petition, Petitioner asserts that the trial court erred by failing to instruct the jury on the lesser included offense to the charged offense of possession of marijuana with intent to distribute. Petition, at 14. In his appeal, Petitioner argued that the trial court erred when it denied defense counsel's request for a jury instruction on the lesser included offense of simple possession of marijuana. Response, Ex. 1, at 23. The OCCA reviewed this claim and determined that the trial court did not abuse its discretion in refusing to give the requested lesser included offense instruction.

The Supreme Court has not recognized a federal constitutional right to a lesser included offense instruction in a non-capital case. In this circuit courts follow an "automatic non-reviewability" rule "for claims based on a state court's failure in a non-capital case, to give a lesser included offense instruction." <u>Dockins v. Hines</u>, 374 F.3d 935, 938 (10th Cir. 2004). <u>See</u> <u>Lujan v. Tansy</u>, 2 F.3d 1031, 1036 (10th Cir. 1993)(internal quotations omitted)("A petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, even if in [the court's] view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense."). Consequently, Petitioner has not stated a cognizable habeas claim regarding the failure of the trial court to give lesser included offense instructions at his trial.

## VII. Error in Admission of Evidence

In Ground Seven, Petitioner asserts that the trial court erred in admitting into evidence a document purporting to contain his signature. In Proposition VII in his direct appeal, Petitioner argued that the prosecution did not properly authenticate a motel room receipt that purportedly bore Petitioner's signature before it was admitted into evidence. Petitioner relied entirely on state law in asserting that the trial court erred in admitting this evidence despite defense counsel's objection to its admission because the prosecution did not present any eyewitness or expert testimony to establish that the document was actually signed by Petitioner.

The OCCA reviewed the claim under an abuse of discretion standard in light of the provisions of Oklahoma's evidence code. The court found that the trial court admitted into

evidence "one of two receipts seized in [Petitioner's] motel room when the search warrant was executed," and that this evidence was admissible based on the investigating officer's testimony that the document was what it purported to be, an item seized from Petitioner's motel room. Response, Ex. 3, at 11. The OCCA concluded the trial court did not abuse its discretion in admitting the document into evidence because the issue of whether the document actually contained Petitioner's signature "was a matter of inference" which went to the weight of the evidence and not its admissibility. Id.

"Federal habeas review is not available to correct state law evidentiary errors." Hooks v. Workman, 689 F.3d 1148, 1180 (10th Cir. 2012)(internal quotation marks omitted). Thus, in arguing that the trial court erred as a matter of state law in admitting the motel room receipt into evidence Petitioner is entitled to habeas relief "only if an alleged state-law error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." Id. (internal quotation marks omitted). See Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998)(state court evidentiary rulings do not warrant habeas relief unless the ruling rendered the "trial so fundamentally unfair as to constitute a denial of federal constitutional rights").

In this case, Petitioner has failed to show any state law error, let alone a fundamentally unfair trial, in the admission of the motel room receipt. As the OCCA found, the motel room receipt was found in a duffle bag in the motel room in which Petitioner had been arrested. The record further shows that a manager of the motel testified that the receipt was used in the regular course of the motel's business. TR vol. II, at 49-50. Another individual who

assisted the motel's manager testified that Petitioner came into the motel's office and discussed paying for the room in which he was later arrested. TR vol. II, at 68-69. Officer Bruning testified that the receipt was found in the motel room in a duffle bag that also contained some men's clothing. TR vol. III, at 39-40. Officer Bruning testified to the discovery of the illegal substances and to the arrest of Petitioner in the same motel room.

The receipt was clearly relevant to the issues before the jury because it bore the signature of "Larry Lawton" and connected Petitioner to the motel room in which the illegal drugs were discovered by police. See Exhibits, State's Ex. Nos. 42, 53. The absence of testimony authenticating the signature on the receipt did not render Petitioner's trial fundamentally unfair. Petitioner has not shown that the OCCA's finding of no abuse of discretion in the admission of the motel receipt was contrary to or an unreasonable application of Supreme Court precedent.

VIII. <u>Trial Court Error - Unfair Surprise</u>

In Ground Eight of the Petition, Petitioner asserts only "unfair surprise" deprived him of a fair trial. Petition, at 18. In his direct appeal, Petitioner asserted that he was unfairly surprised when on the first day of his trial the prosecutor submitted a second amended information to the court reflecting Petitioner had prior drug-related felonies. Petitioner stated that just five days before the trial began the prosecutor had indicated that no former felony convictions would be presented at the trial. However, the trial court ruled that all of Petitioner's prior drug-related felony convictions could be included in the second amended

information.[4]

The OCCA made the following factual findings in resolving this issue in Petitioner's direct appeal:

> The record reflects that after filing the original charges, the prosecutor had doubts that the prior convictions were admissible due to their age. Further research convinced the prosecutor that the convictions were admissible to enhance the trafficking charge, and the State amended the information accordingly just before trial. [Petitioner] failed to object to the amendment in the court below, and waived all but plain error. . . . [Petitioner] has not been unfairly surprised, nor his current conviction improperly enhanced, by virtue of pre-trial amendments to the second page of the information. . . . [Petitioner] has not shown that plain or obvious error affected the outcome of sentencing.

Response, Ex.3, at 11-12.

In arguing that he was unfairly surprised by the prosecutor's filing of a second amendment of the information immediately prior to the beginning of his trial, Petitioner couched his claim in constitutional terms. However, the OCCA did not address or rely on federal law in rejecting the claim. Petitioner has not alleged or shown that his trial was rendered fundamentally unfair by the second amendment of the information. The OCCA found that the enhancement of the trafficking charge with Petitioner's prior drug-related convictions was allowed under Oklahoma law. Petitioner has not shown that the OCCA's decision was contrary to or an unreasonable application of prevailing Supreme Court

---

[4]Under Oklahoma law, a conviction for trafficking in illegal drugs after two or more previous drug related felony convictions carries a mandatory term of life imprisonment without the possibility of parole. See Okla. Stat. tit. 63, § 2–415(D)(3).

jurisprudence.

## IX. Trial Court Error - Evidentiary Harpoon

Petitioner alleges in Ground Nine of the Petition that an "evidentiary harpoon" deprived him of a fair trial. In his direct appeal, Petitioner argued that he was denied a fair trial when a law enforcement officer was allowed to testify that as the door of the motel room opened he saw "the subject identified as Larry Lawton from the photos and past run-ins with him, " a statement Petitioner argued indicate he "was a bad guy, often in trouble with the law." Response, Ex. 1, at 35.

Because Petitioner had not objected to this testimony during his trial, the OCCA reviewed the issue for plain error only and found that

> [a]lthough the officer's statement could have raised a possibility of prior arrests, this was only indirect and not calculated to prejudice the defendant. Further, in light of the remaining evidence, we cannot say that the officer's statement was a plain or obvious violation of the rule against evidentiary harpoons, or that it affected the outcome of the trial.

Response, Ex. 3, at 12-13.

In a due process challenge to the admission of evidence, Petitioner is not entitled to habeas relief unless he can demonstrate that the evidence was "so unduly prejudicial that it renders the trial fundamentally unfair." Welch v. Sirmons, 451 F.3d 675, 692 (10th Cir.2006) (quoting Payne v. Tennessee, 501 U.S. 808, 825 (1991)). Petitioner has failed to demonstrate how the testimony by the officer rendered his trial fundamentally unfair. The officer did not refer to any specific prior criminal proceedings involving Petitioner. He only vaguely

referred to having previously encountered Petitioner. Petitioner has failed to show that the OCCA's denial of this claim was contrary to or an unreasonable application of Supreme Court law. Accordingly, Petitioner is not entitled to habeas relief concerning his claim of an evidentiary harpoon.

X. Prosecutorial Misconduct

In Ground Ten of the Petition, Petitioner simply alleges "prosecutorial misconduct" denied him a fair trial. In Proposition X in his direct appeal Petitioner asserted that prosecutorial misconduct denied him a fair trial when the prosecutor "cast aspersions on defense counsel" by referring to a "red herring" during closing arguments, stated his personal opinion as to the credibility of testifying police detectives, and "vouched for the State's version of events" during closing arguments. Response, Ex. 1, at 38-40.

The OCCA rejected this claim on its merits. With respect to the prosecutor's use of the term "red herring," the court found no plain error occurred when the prosecutor used "this forensic phrase." Response, Ex. 3, at 13-14. Considering the other allegedly improper comments made by the prosecutor, the OCCA found "the prosecutor's actual argument does not suggest that she is making any kind of statement or reassurance regarding her *own* belief in the credibility of the testifying officers, or other evidence, . . ., but rather is suggesting that logical inferences from the evidence show the defense's claims are untrue. These comments are not improper." Id. at 14 (internal quotation marks, brackets, and citations omitted).

When a prosecutor's alleged misconduct does not directly affect a specific constitutional right, "[h]abeas relief is available for prosecutorial misconduct only when the

misconduct is so egregious that it renders the entire trial fundamentally unfair." Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974)). This determination is made "only after considering all of the surrounding circumstances, including the strength of the state's case." Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005).

There was abundant evidence of Petitioner's guilt presented at his trial, and the allegedly improper comments made by the prosecutor during his trial (as alleged in his direct appeal) were not so egregious that his trial was rendered fundamentally unfair. Petitioner has not shown that the OCCA unreasonably applied the Donnelly standard in its decision, and he is not entitled to habeas relief concerning this claim.

## XI. Cumulative Errors

In his final ground for habeas relief, Petitioner alleges, again without benefit of any argument, that "cumulative error deprived [him of] a fair trial." The OCCA rejected this claim in Petitioner's direct appeal on the basis that "[w]e found no error in the previous propositions, and thus no errors to accumulate." Response, Ex. 3, at 14.

The Tenth Circuit Court of Appeals has addressed the issue of cumulative errors and explained the doctrine means "that prejudice can be accumulated *disjunctively* - that all a defendant needs to show is a strong likelihood that the several errors in his case, when considered additively, prejudiced him." Grant v. Trammell, 727 F.3d 1006, 1026 (10th Cir. 2013), cert. denied, 134 S.Ct. 731 (2014). "In the federal habeas context, cumulative-error analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their

cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,' an analysis ... undertake[n] only if there are at least two errors." Fairchild v. Trammell, 784 F.3d 702, 724 (10th Cir. 2015)(quoting Lott v. Trammell, 705 F.3d 1167, 1223 (10th Cir. 2013)). See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998)(cumulative error analysis "applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors").

No errors have been found that warrant cumulative error analysis, and the OCCA did not unreasonably apply Supreme Court authority in rejecting this claim in Petitioner's direct appeal.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Second Supplemental Report and Recommendation with the Clerk of this Court by ___ December 8th, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Second Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Second Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not

specifically addressed herein is denied.

ENTERED this <u>   18th   </u> day of <u>   November   </u>, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE